IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GZ  GOURMET FOOD AND BEVERAGE, INC. | ) | |
| a California Corporation | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. |
| | ) | 07C 7110 |
| RADIOACTIVE ENERGY OF ILLINOIS, LLC., | ) | |
| an Illinois Limited Liability Company; and | ) | Judge Dow |
| WALTER ASCHER, an Individual, | ) | Magistrate Judge Brown |
| | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff GZ GOURMET FOOD AND BEVERAGE, INC. ("GZ" or "Plaintiff") for its

first amended complaint against RADIOACTIVE ENERGY OF ILLINOIS, LLC. ("REI") and

WALTER ASCHER ("Ascher") alleges as follows:

**NATURE OF ACTION**

1.    This case arises from a scheme to misuse a position of trust, defraud an early stage,

growing company, confuse the public, misappropriate intellectual property and to misrepresent

the true source of a product. The Complaint seeks monetary and injunctive relief for violations

of: (i) Lanham Act 15 U.S.C. § 1125(a); (ii) the Illinois Deceptive Trade Practices Act, 18 ILCS

510/1/, *et seq.*; (iii) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

505/1 *et seq.*; (iv) the Illinois Anti-Dilution Act, 765 ILCS 1036/65 *et seq.*; (v) Trademark

infringement under  765 ILCS 1036/70 *et seq.*; (vi) Lanham Act 15 U.S.C. §1125(d); (vii) breach

of contract; and (viii) fraud;.

**THE PARTIES**

2.    Plaintiff GZ is a small beverage company incorporated in California which was founded

in 2004 and is operated by Richard Saxby and his wife Cameron Saxby.  GZ manufactures,

promotes and sells an energy drink called RadioActive Energy (the "Product") throughout the

United States.

3.      Defendant Radioactive Energy of Illinois, LLC ("REI") is an Illinois limited liability company formed to exploit the name, goodwill and financial opportunities of the Product. Neither GZ nor the Saxbys own any interest in REI.

4.      Defendant Walter Ascher ("Ascher") is the owner and principal of REI. He is an experienced business man, attorney and real estate investor who promotes real estate investments on the Internet. (Exhibit A)

## JURISDICTION

5.      Jurisdiction arises under the Lanham Act, 15 U.S.C. §1125(a), and pursuant to 18 U.S.C. §§ 1030(g) and 28 U.S.C. § 1331.    This Court also has supplemental  jurisdiction over the pendant state law claims under 28 U.S.C. § 1367 because these claims are so related to GZ's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## VENUE

6.      Venue in this district is appropriate, pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to the dispute occurred in this district, and the Court has personal jurisdiction over each of the defendants.

## GENERAL ALLEGATIONS

7.      GZ brings this lawsuit after Ascher and REI: (i) have refused to comply with GZ's demands that Ascher cease misrepresenting himself as the CEO of GZ; (ii) Ascher and REI have refused to comply with GZ's demands that they cease infringing GZ's intellectual property; and (iii) Ascher has failed to comply with his contractual obligations to distribute the Product and pay outstanding invoices.

### GZ'S Intellectual Property

8.      Prior to the acts complained of herein and through the present, GZ has been engaged in

the business of manufacturing, promoting and advertising its RadioActive Energy beverage throughout the United States and uses its RADIOACTIVE ENERGY™ and RADIOACTIVE ENERGY and design™ trademarks to identify and promote its Product (the "GZ Marks").

9.      GZ has exclusive licensing rights for common law trademarks in its RADIOACTIVE ENERGY™ and RADIOACTIVE ENERGY and design™ marks and is the owner of pending federal application SN 78/598,695 for RADIOACTIVE ENERGY and design™ as well as Illinois State Trademark registration 098504 for RADIOACTIVE ENERGY™ and Illinois State Trademark registration 098505 for RADIOACTIVE ENERGY and design™ and various pending copyright applications for artwork, images and logos used in connection with the Product.

10.     On March 25, 2005 the internet domain name <radioactiveenergy.com> was registered on behalf of GZ.  On June 10, 2005, the internet domain name <catchtheglow.com> was also registered for GZ. Since registering the <radioactiveenergy.com> domain name, GZ has expended vast sums of money in designing, maintaining and promoting its website (the "GZ Website") and continues to maintain the GZ Website.

11.     The GZ Website is one of the primary media used by GZ for the promotion, marketing and sale of the Product

12.     The GZ Website is the only website authorized for the offering and sale of the Product and the promotion and marketing of the Product.

13.     GZ has expended millions of dollars in establishing, maintaining, advertising, promoting and using the GZ Marks. As a result of those efforts and expenditures made by GZ the GZ Marks have become a symbol of GZ, its products and goodwill and the purchasing public and the trade have come to recognize the GZ Marks as indicating GZ as the source or origin of its products.

**The Distribution Agreements**

14.     On March 2, 2007 GZ entered into a Distributorship Agreement with Ascher (the

"Agreement") (Exhibit B) and on March 14, 2007 GZ and Ascher entered into an additional Distributorship Agreement ("Additional Agreement") (Exhibit C) (collectively the "Agreements"). The essential nature of Ascher's duties under the Agreements was that Ascher would use his best efforts to merchandise, promote, advertise, develop and maintain sale and distribution of the Product in his assigned areas and to order and pay for a fixed minimum quantity of the Product.

15.    GZ entered into the Agreements based on Ascher's false representations that he owned or controlled a large trucking company and that he owned or leased extensive warehouse facilities, and that he had extensive expertise, experience and well established connections in the beverage distribution industry. The Agreements included provisions obligating Ascher to protect the intellectual property of GZ, not to use it to his own advantage, and to maintain standards of distribution and capability of performance.

16.    Article IV of the Agreements, which is captioned "Undertakings of the Distributor," sets forth an extensive list of duties and responsibilities of Ascher as a distributor under the Agreements. Those duties include, among other things,  using "best efforts to merchandise, promote, develop and maintain the sales and distribution of products…"; to "distribute authorized advertising materials;" to "maintain a qualified selling staff;" to "effect distribution of the products by beverage trucks sufficient to service the Territory;" and to "maintain an inventory of product."

**Ascher's Breach of The Distribution Agreements**

17.    Ascher grossly and fraudulently misrepresented his and REI's capability to distribute the Product pursuant to Article IV of the Agreement. Ascher never had distribution capabilities and does not have them now.  Upon information and belief, Ascher lacks the trucking company, the warehouse facilities, the management personnel, and the widespread industry connections necessary to establish a distribution network.

18.    Ascher and REI have received point of sale materials ordered from GZ, Product, promotional materials, including marketing packages, point of sale displays, tee shirts, caps, and other valuable visual displays.  None of these items have been paid for and they remain unpaid to date despite repeated demand and in breach of Section 7.2 of the Agreements which provides that "[p]ayment shall be made via wire transfer, company check or credit card prior to shipping Product."

19.    Ascher and REI breached the minimum monthly beverage purchase requirements of Section 5.1 of the Agreements which obligate Ascher and REI to purchase 1,600 cases of Product each month for the first three months following the execution of the Agreements, 4,800 cases in the 4th month following execution of the Agreements and 8,000 cases in the 5th and 6th months following execution of the Agreements. Neither Ascher nor REI have ever complied with any of such requirements.   Ascher's and REI's failure to comply with the Agreements and infringement of GZ's intellectual property resulted in the termination of the Agreements by GZ on September 5, 2007.

### The Defendants' Infringement of the GZ Marks and GZ Copyrights

20.    Although not a requirement of the Agreements, Ascher and REI initially placed and funded billboards at six locations along major expressways in the Chicago area using images approved and provided by GZ. Subsequently, and without notice to GZ and without its approval, Ascher and REI had the approved images taken from the billboards, replacing them with unauthorized marks and images instead of approved GZ Marks and GZ Copyrights. (Exhibit D). The billboards prominently feature Ascher's girlfriend and depict an outdated Product container that GZ has replaced with a more attractive and marketable container.  Ascher's unauthorized and unapproved use of the unauthorized marks and images instead of approved GZ Marks and GZ Copyrights was in violation of Section 9.1(c) of the Agreements which allows GZ to approve all uses of its trademarks and copyrights.  On September 5, 2007 GZ terminated the Agreements

and demanded that Ascher and REI cease using GZ's intellectual property without authorization. (Exhibit E).  Despite numerous reassuring statements from Ascher that the offending billboards would be and had been removed, to date neither Ascher nor REI have taken down the billboards and they have defied GZ's demands to do so and continue to infringe upon GZ's intellectual property rights.

21.   Upon information and belief, Ascher has repeatedly held himself out to the public as the CEO and owner of Radioactive Energy Drink through his company REI. In addition to representing himself as the CEO of the company to employees, personal friends and business associates, including entities with which GZ has existing relationships, Ascher has made public statements to the general media with the intent to create the unmistakable impression that i) he, through REI, was the owner and licensor of the GZ Marks and Copyrights, ii) he owned or controlled GZ through REI which manufactured and distributed the Product and iii) that he was the CEO of GZ through REI and controlled the business and operations of GZ.

22.   Upon information and belief, the Defendants registered the domain name <radioactivena.com> on or about July 18, 2007. Shortly thereafter, Ascher and REI set up their own personalized website at <radioactivena.com> (Exhibit F) (the "Ascher Website") using the GZ Marks and GZ Copyrights to describe the Product and to provide information about it and REI. The Ascher Website uses the GZ Marks and GZ Copyrights without authorization, is amateurish, ineptly designed and conflicts with GZ's official website. The Ascher Website also makes it appear that Ascher and REI are the owners and promoters of the Product.   On September 5, 2007, GZ terminated the Agreements and demanded the Ascher Website be taken down. (Exhibit G). To date, neither Ascher nor REI have complied with GZ's demands and

continue to infringe GZ's intellectual property rights.

23.     The <radioactivena.com> domain is being used by the Defendants to divert unwitting and unknowing Internet users to the Ascher Website.

24.     The Defendants have no trademark or other intellectual property rights in the <radioactivena.com> domain.

25.     The Defendants have no authority to use the GZ Marks in their business.

26.     By applying for and registering the <radioactivena.com> domain without the authorization of GZ and subsequently using the <radioactivena.com> domain name to route potential and existing GZ customers to the Ascher Website, the Defendants have acted in bad faith with the intent to direct current and potential customers from GZ and to profit from GZ's Marks.

27.     Upon information and belief, the Defendants do not believe and have no reasonable grounds to believe that their use of the <radioactivena.com> domain or the GZ Marks is a fair use or is otherwise lawful.

28.     The Defendants' use of GZ's RADIOACTIVE ENERGY™ trademark in the legal name of REI is without GZ's authorization and is confusingly similar to the GZ Marks and has caused multiple instances of confusion and constitutes trademark infringement.  On September 5, 2007, GZ terminated the Agreements and demanded that Ascher and REI cease using GZ's trademark as a tradename and provide evidence of filings with the Illinois Secretary of State that a name change had been effected. To date, neither Ascher nor REI have complied with GZ's demand and their infringement of GZ's intellectual property rights continues.

29.     REI's and Ascher's misrepresentation regarding their distribution capability, their refusal to pay invoices, infringement of GZ's intellectual property and Ascher's misrepresenting himself as the CEO and owner of GZ have caused great disruption and business interruption to GZ and major loss of value.

## COUNT I
## Violation of Lanham Act, 15 U.S.C. § 1125(a)

30.    Plaintiff repeats and realleges paragraphs 1 through 29 as if fully set forth herein.

31.    The Defendants' use of the GZ Marks is likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of the Defendants with GZ or as to the origin sponsorship or approval of GZ's goods.

32.    The Defendants' aforesaid acts constitute unfair competition in violation of the Lanham Act. 15 U.S.C. § 1125(a).

WHEREFORE, Plaintiff GZ demands judgment against the Defendants

A.    Granting a preliminary and permanent injunction against the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert with them from using in any manner the GZ Marks, either alone or in combination with other words or designs, or any other terms which are confusingly similar to the GZ Marks in sound, sight or meaning, on or in connection with any goods or services whatsoever, and from doing any other act or thing likely to induce the belief that Defendants' goods or services are in any way connected with GZ or calculated or likely to cause confusion, mistake or deception or from diluting the distinctive quality of the GZ Marks, and from otherwise unfairly competing with Plaintiff GZ or misappropriating that which rightfully belongs to GZ in accordance with 15 U.S.C. § 1125(a).

B.    Permanently enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the domain name <radioactivena.com.>

C.    Ordering the transfer of the domain name <radioactivena.com> to GZ.

Requiring the Defendants to account to GZ for all profits arising from the foregoing acts

of infringement, unfair competition, dilution and misappropriation and awarding to GZ its damages, including but not limited to its damages arising therefrom, and a sum equal to three (3) times the damages and profits assessed, pursuant to 15 U.S.C. Sec. 1117(a);

D.    Awarding Plaintiff its reasonable attorney's fees and costs for bringing this suit and other related expenses, pursuant to 15 U.S.C. Sec. 1117(a);

E.    Granting such other relief as the Court deems just and proper.

## COUNT II
## Violation of The Illinois Uniform
## Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.

33.    Plaintiff repeats and re-alleges paragraphs 1 through 32 as if fully set forth herein.

34.    The Defendants have willfully diverted GZ's customers, thereby depriving GZ of sales and revenue which it otherwise would have had.

35.    The Defendants' use of the GZ Marks to refer and divert consumers to the Ascher Web Site and the misrepresentation of Ascher as the CEO of GZ has caused confusion and will continue to cause confusion, mistake and deception as to the source of origin, sponsorship, affiliation and endorsement of the Defendants' goods and services because consumers and potential consumers are likely to believe that such goods and services originate with Plaintiff GZ or a company legitimately connected with, approved by, or related to GZ.

36.    As a result of the foregoing conduct, the Defendants have willfully engaged in deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(1), (2), (3), (5) and (12).

37.    Unless prevented, the Defendants will continue to appropriate the business and goodwill of GZ and divert GZ's customers by continuing to engage in acts which constitute deceptive trade practices. Accordingly, GZ will suffer irreparable harm for which it has no adequate remedy at law.

WHEREFORE, Plaintiff GZ demands judgment against the Defendants and prays

that the Court enters an order:

A.    Granting a preliminary and permanent injunction, enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the GZ Marks, either alone or in combination with other words or designs, or any other terms which are confusingly similar to the GZ Marks in sound, sight or meaning, on or in connection with any goods or services whatsoever, and from doing any other act or thing likely to induce the belief that the Defendants goods or services are in anyway connected with GZ, or calculated or likely to cause confusion, mistake or deception, or from diluting the distinctive quality of the GZ Marks, and from otherwise unfairly competing with GZ or misappropriating that which rightfully belongs to GZ pursuant to 815 ILCS 510/3.

B.    Permanently enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from representing themselves as being an officer, representative, agent or employee of GZ and using in any manner the domain name <radioactivena.com.>

C.    Ordering the transfer of the domain name <radioactivena.com> to GZ.

D.    Awarding Plaintiff its reasonable attorney's fees and costs for bringing this suit and other related expenses, pursuant to 815 ILCS 510/3.

E.    Granting such other relief as the Court deems just and proper.

### COUNT III
### Violation of The Illinois Consumer
### Fraud and Deceptive Practices Act, 815 ILCS 505/1. *et. seq*.

38.    Plaintiff repeats and re-alleges paragraphs 1 through 37 as if fully set forth herein.

39.    The Defendants have willfully and intentionally deceived GZ's customers and/or

potential customers by diverting them away from GZ, thereby depriving GZ of sales and revenue, in excess of $75,000.

40.    The Defendants' willful conduct has resulted in injuries to Plaintiff and has materially diminished fair competition in violation of the public policy of the State of Illinois.

41.    As a result of the above and foregoing, the Defendants have willfully engaged in deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2.

WHEREFORE, Plaintiff GZ demands judgment against the Defendants and prays that the Court enters an order:

A.    Granting a preliminary and permanent injunction, enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from misrepresenting themselves as being an officer, representative, agent or employee of GZ and from using in any manner the GZ Marks, either alone or in combination with other words or designs, or any other terms which are confusingly similar to the GZ Marks in sound, sight or meaning, on or in connection with any goods or services whatsoever, and from doing any other act or thing likely to induce the belief that the Defendants' goods or services are in any way connected with GZ, or calculated or likely to cause confusion, mistake or deception, or from diluting the distinctive quality of the GZ Marks, and from otherwise unfairly competing with Plaintiff GZ or misappropriating that which rightfully belongs to GZ, in accordance with 815 ILCS 505/10a(c).

B.    Permanently enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the domain name <radioactivena.com.>

C.    Ordering the transfer of the domain name <radioactivena.com> to GZ.

D.    Requiring the Defendants to account to GZ for all profits arising from the foregoing misconduct of the Defendants and awarding to GZ its damages including but not limited to damages arising therefrom, as well as actual economic damages pursuant to 815 ILCS 505/10a(a).

E.    Awarding Plaintiff punitive damages, pursuant to 815 ILCS 505/10a(a).

F.    Awarding Plaintiff its reasonable attorney's fees and costs for bringing this suit and other related expenses, pursuant to 815 ILCS 505/ l0a(c).

G.    Granting such other relief as the Court deems just and proper.

### COUNT IV
### Violation of
### The Illinois Anti-Dilution Act, 765 ILCS 1036/65. *et. seq*.

42.    Plaintiff repeats and re-alleges paragraphs 1 through 41 as if fully set forth herein.

43.    As a result of GZ's long, pervasive and expensive investment in the GZ Marks, the GZ Marks have become famous and a symbol of GZ, its services and goodwill, and the purchasing public and the trade have come to recognize the GZ Marks as distinctive of GZ's services and as indicating GZ as the source of origin for those services. The Defendants' unauthorized use of the GZ Marks dilutes the distinctive qualities of the GZ Marks.

44.    The Defendants have willfully intended to trade on GZ's reputation, fame and goodwill in the GZ Marks and have willfully caused dilution of the GZ Marks.

45.    The Defendants' aforesaid acts have and are likely to continue to cause injury to GZ's reputation and dilution of the distinctive quality of the GZ Marks in violation of the Illinois Anti-Dilution Act, 765 ILCS 1036/65. *et. seq*.

WHEREFORE, Plaintiff GZ demands judgment against the Defendants and prays that the Court enters an order:

A.    Granting a preliminary and permanent injunction, enjoining and restraining the

Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the GZ Marks, either alone or in combination with other words or designs, or any other terms which are confusingly similar to the GZ Marks in sound, sight or meaning, on or in connection with any goods or services whatsoever, and from doing any other act or thing likely to induce the belief that the Defendants' goods or services are in any way connected with GZ, or calculated or likely to cause confusion, mistake or deception, or from diluting the distinctive quality of the GZ Marks, and from otherwise unfairly competing with Plaintiff GZ or misappropriating that which rightfully belongs to GZ, in accordance with 765 ILCS 1036/70.

B.      Permanently enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the domain name <radioactivena.com.>

### COUNT V

### Violation of
### 765 ILCS 1036/70. et. seq. Trademark Infringement

Plaintiff repeats and re-alleges paragraphs 1 through and including 45 as if fully set forth herein

46.     GZ is the owner of Illinois state trademark registration No: 098504 for

RADIOACTIVE ENERGY™ for beverages, namely energy drinks.

47.     GZ is the owner of Illinois state trademark registration No: 098505 for

RADIOACTIVE ENERGY and design™ for beverages, namely, energy drinks.

48.     Defendants without the consent of GZ have willfully used colorable imitations of GZ's registered Illinois state trademarks in connection with the sale, distribution, offering for sale, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

WHEREFORE, Plaintiff GZ demands judgment against Defendants and prays that the Court enters an order:

A.       Granting a preliminary and permanent injunction, enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the GZ's registered Illinois state trademarks, either alone or in combination with other words or designs, or any other terms which are confusingly similar to GZ's registered Illinois state trademarks in sound, sight or meaning, on or in connection with any goods or services whatsoever, and from doing any other act or thing likely to induce the belief that the Defendants' goods or services are in any way connected with GZ, or calculated or likely to cause confusion, mistake or deception, or from diluting the distinctive quality of GZ's registered Illinois state trademarks, and from otherwise unfairly competing with Plaintiff GZ or misappropriating that which rightfully belongs to GZ, in accordance with 765 ILCS 1036/70.

B.       Permanently enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner any designation confusingly similar to GZ's registered Illinois trademarks.

C.        Ordering the transfer of the domain names <radioactivena.com> to GZ.

D.        Requiring the Defendants to account to GZ for all profits arising from the foregoing acts of infringement, unfair competition, dilution and misappropriation, and awarding to GZ its damages arising therefrom and a sum equal to three (3) times the damages and profits assessed, pursuant to 765 ILCS 1036/70.

E.        Awarding Plaintiff its reasonable attorney's fees and costs for bringing this suit and other related expenses, pursuant to 765 ILCS 1036/70.

F.        Granting such other relief as the Court deems just and proper.

## COUNT VI
### Violation of the Anticybersquatting
### Consumer Protection Act, 15 U.S.C. §1125(d)

49.      Plaintiff repeats and re-alleges paragraphs 1 through 48 as if fully set forth herein.

50.      GZ is the owner of Illinois state trademark registration No: 098504 for RADIOACTIVE ENERGY™ for beverages, namely energy drinks.

51.      GZ is the owner of Illinois state trademark registration No: 098505 for RADIOACTIVE ENERGY and design™ for beverages, namely, energy drinks.

52.      GZ has trademark and other intellectual property rights in the GZ Marks and has used the GZ Marks since long prior to the Defendants' registration of the <radioactivena.com> domain.

53.      Defendants have no reasonable grounds to believe that their use of the <radioactivena.com> domain or the GZ Marks is a fair use or is otherwise lawful.

54.      By applying for and registering the <radioactivena.com> domain without the authorization of GZ and subsequently using the <radioactivena.com> domain

name to route potential and existing GZ customers to the Ascher Website, the Defendants have acted in bad faith with the intent to direct current and potential customers from GZ and to profit from GZ's Marks.

The Defendants' wrongful conduct complained of herein constitutes a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. Sec. 1125(d)(1)(A).

WHEREFORE, Plaintiff GZ demands judgment on its behalf and against the Defendants and prays that the Court enters its order providing the following relief:

A.  Granting an affirmative mandatory preliminary injunction, followed thereafter by a permanent injunction, enjoining and restraining the Defendants, their officers, agents. servants, employees, attorneys, related companies, successors and assigns, and all persona in active concert or participation with them, from using in any manner the GZ Marks, either alone or in combination with other words or designs, or any other terms which are confusingly similar to the GZ Marks in sound, sight or meaning, on or in connection with any goods or services whatsoever, and from doing any other act or thing likely to induce the belief that the Defendants' goods or services are in any way connected with GZ, or calculated or likely to cause confusion, mistake or deception, or from diluting the distinctive quality of the GZ Marks, and from otherwise unfairly competing with Plaintiff GZ or misappropriating that which rightfully belongs to GZ, in accordance with I5 U.S.C. Sec. 1116(a).

B.  Permanently enjoining and restraining the Defendants, their officers, agents, servants, employees, attorneys, related companies, successors and assigns, and all persons in active concert or participation with them, from using in any manner the domain name <radioactivena.com>.

C.  Ordering the transfer of the domain name <radioactivena.com> to GZ.

D.  Requiring the Defendants to account to GZ for all profits arising from the

foregoing acts of infringement, unfair competition, dilution and misappropriation, and awarding to GZ its damages arising therefrom and a sum equal to three (3) times the damages and profits assessed, pursuant to 15 U.S.C. Sec. 1117(a).

E.   Awarding Plaintiff its reasonable attorney's fees and costs for bringing this suit and other related expenses, pursuant to 15 U.S.C. Sec. 1117(a).

F.   As and for Plaintiff's claim for relief for violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. Sec. 1125(d)(1), awarding Plaintiff statutory damages of not less than $1,000.00 but not more than $100,000.00 for the domain name complained of, pursuant to 15 U.S.C. Sec. 1117(d), in lieu of actual damages and profits.

G.   Granting such other relief as the Court deems appropriate.

## COUNT VII
## Breach of Contract

55.  Plaintiff repeats and incorporates paragraphs 1 through 54 as if fully set forth herein.

56.  Pursuant to the Distributorship Agreements between GZ and Ascher, Ascher and REI undertook and promised, among other things, to:

A. Use best efforts to merchandise, promote, develop and maintain the sales and distribution of Product;

B. Effect distribution of the Product by beverage trucks sufficient to service the Territory;

C. Refrain from acting or purporting to act as an agent or representative of GZ;

D. Distribute in a reasonable, economically and advantageous manner point of sale advertising material where the Product was sold;

E. Maintain a qualified selling staff;

F. Effect and maintain distribution of the Product by the use of beverage trucks

sufficient in number to adequately serve the Territory;

G. Maintain an inventory of the Product in agreed upon quantities;

H. Use commercially reasonable efforts to perform their duties in a manner that preserves and protects GZ's business reputation and proprietary rights in the Product;

I. Purchase agreed monthly minimum quantities of the Product;

J. Pay for the Product ordered, including shipping costs, prior to shipment;

K. Honor GZ's right to approve all advertising and marketing materials used by Ascher and REI;

L. Return to GZ confidential information upon termination of the Agreements;

M. Cease using the Product names or marks or variants sounding like or similar to GZ's names and marks upon termination of the Agreements;

N. Remove any identification of itself as a distributor for GZ upon termination of the Agreements; and

O. Indemnify GZ for any violation by Ascher or REI of the Agreements.

57. Ascher and REI completely disregarded their obligations under the Agreements and violated virtually every one of his obligations under the Agreements, in that among other things, Ascher and REI:

A. Failed to use best efforts to merchandise, promote, develop sales and develop distribution of the Product, generating no sales or only negligible sales for months;

B. Misrepresented or intentionally created a false impression that he and REI were agents or representatives of GZ;

C. Failed to distribute the Product in any significant quantity;

D. Failed to distribute point of sale advertising materials;

E. Failed to maintain a qualified selling staff;

F. Failed to maintain beverage trucks sufficient to serve the Territory;

G. Failed to maintain an inventory of the Product in agreed quantities;

H. Failed to perform his duties in a manner that preserved and protected GZ's business reputation and proprietary rights;

I. Failed to purchase the agreed upon monthly minimum quantities of the Product;

J. Failed to pay for the Product ordered, including shipping costs, either before or after shipment, amounting to tens of thousands of dollars;

K. Disregarded GZ's right to approve all advertising and marketing materials used by Ascher and REI, in that, among other things, he and REI caused unapproved and undesirable billboard advertisements for the Product to be erected in the Chicago area and created and maintained an unapproved and undesired website relating to the Product;

L. Failed to return to GZ confidential information upon termination of the Agreements;

M. Continued to use the Product names or marks or variants sounding like or similar to GZ's names and marks upon termination of the Agreements, including, among other things, the <radioactivena.com> website;

N. Failed to remove any identification of itself or REI as a distributor for GZ upon termination of the Agreements;

O. Failed to indemnify GZ for his and REI's violations of the Agreements, and

P. Misrepresented himself to be an officer of GZ.

58. As a proximate result of Ascher's complete breach of the Agreements, GZ has sustained damages, including among other things, loss of critical opportunities to distribute the Product locally, regionally and nationally;  loss of the value of the Product

Ascher and REI received without payment; cover costs expended and to be expended to have others perform the sales, distribution, administrative, advertising and transportation functions he and REI falsely promised to perform; and legal expenses to remedy the breaches of the Agreements.

59. At all times GZ performed its obligations under the Agreements.

WHEREFORE, Plaintiff GZ demands judgment on its behalf and against Walter Ascher and REI:

A.    Awarding GZ compensatory damages in an amount which will fully and fairly compensate it for all damages arising out of Ascher's and REI's breach of the Agreements;

B.    Finding that Ascher and REI have no distribution rights whatsoever with respect to GZ's Product;

C.    Requiring him and REI to return all confidential information to GZ;

D.    Enjoining him and REI from holding themselves out as agents or representatives of GZ;

E.    Enjoining him and REI from using any trademark, trade name, design or other property of GZ;

F.    Requiring him and REI to relinquish and pay GZ any profits or other income or benefits arising out of their relationship with GZ or its Product;

G.    Awarding GZ its costs and attorneys' fees relating to this action; and

H.    Awarding such further relief as may be appropriate.

## **COUNT VIII**

### **(FRAUD)**

60.   Plaintiff repeats and incorporates paragraphs 1 through 59 as if fully set forth herein.

61.   Prior to entering into the Distributorship Agreements, in or about February 2007, Ascher had several meetings and phone calls with Richard Saxby.

62.   During these meetings and calls, Ascher made a number of material misrepresentations to Saxby in order to induce GZ to enter into distribution agreements with him. At the time Ascher made these representations, he knew they were false, and they were designed to mislead Saxby and GZ into believing that Ascher was qualified and capable to serve as a distributor of the Product in the Territories.

63.   The misrepresentations Ascher made included but are not necessarily limited to the following:

  A. Ascher falsely represented to Saxby that he had extensive experience and expertise as a beverage distributor, when in fact, he lacked any such experience;

  B. Ascher falsely represented that he had in place a  staff of employees experienced in beverage distribution, when in truth, no such  staff existed;

   C. Ascher falsely represented that he had  personal and well established connections, contacts and access to retailers who were appropriate sellers of the Product, and who were willing to sell the Product, which was not true;

  D. Ascher falsely represented that he controlled a large trucking company with trucks capable of handling a large volume of Product sales, which was false;

  E. Ascher falsely represented that he owned or leased extensive warehouse facilities to use for distribution of the Product, which was false; and

  F. Ascher falsely represented that he had a successful personal history of distributing comparable products, which was false.

64. Saxby and GZ reasonably relied on these representations in entering into the Agreements.  Had they known the truth, they would never have entered into the Agreements with Ascher and REI.

65. As a result of these misrepresentations, GZ entered into the Agreements with Ascher and REI, entrusted him to distribute the Product in the Territories specified in the Agreements, and entrusted him with a vital role in making the Product available and producing sales to a large population.

66. Ascher's misrepresentations regarding  his experience, resources and history, and GZ's reliance on Ascher's misrepresentations,  has resulted in GZ incurring a tremendous amount of  monetary damages  in the form of lost opportunities and revenues at a key time in the growth of GZ and the expected distribution of the Product, and resulted in negatively and severely impacting nationwide distribution of the Product, which has hindered sales of the Product not only in the Territories for which Ascher and REI were responsible, but throughout the United States and the world, as Ascher's incompetence or inexperience hindered the growth of  the Product in  becoming  a national and multinational product and in deriving economies of scale such as national marketing campaigns.

67. Ascher's incompetence and inexperience has also directly damaged the marketing of the Product as well as its distribution, since Ascher has undermined the uniform marketing of the Product through means such as displaying billboards for the Product featuring unapproved images including Ascher's girlfriend and outdated versions of the Product's container and its appearance and maintaining the Ascher website which detracts customers and potential customers from GZ's own website.

68. Ascher and REI made the foregoing misrepresentations willfully for their own advantage and without regard for the extensive damage it was likely to and actually caused GZ.

WHEREFORE, Plaintiff GZ demands judgment on its behalf and against Walter Ascher and REI:

A.    Awarding GZ compensatory damages in an amount which will fully and fairly compensate it for all damages arising out of Ascher's and REI's fraud;

B.    Awarding GZ punitive damages in an amount to be established at trial;

C.    Awarding GZ its costs and attorneys' fees incurred  in connection with this action;

D.    Awarding such further relief as may be appropriate.

GZ GOURMET FOOD AND BEVERAGE, INC.

By:_____
                    One of Its Attorneys

The Law Office of Peter Ordower
10 S. LaSalle Street
 Suite 3500
Chicago, Illinois 60603
312-263-8060